## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LEZLEE STRANGER,

        Plaintiff,

    v.

WALMART SUPERCENTER #2208,
WAL-MART, WALMART, INC.,
WAL-MART STORES EAST, INC.,
WAL-MART STORES EAST, LP,
WAL-MART SUPERCENTER, WAL-
MART TRS, LLC and ABC
COMPANIES,

        Defendants.

No. 4:24-CV-01093

(Chief Judge Brann)

## MEMORANDUM OPINION

### OCTOBER 3, 2024

## I.   BACKGROUND

This is a "slip-and-fall" premises liability case.[1] On May 20, 2024, Plaintiff

Lezlee Stranger filed a complaint in the Court of Common Pleas of Philadelphia

County.[2] The complaint named the following entities as defendants: Walmart

Supercenter #2208; Wal-Mart; Walmart, Inc.; Wal-Mart Stores East, Inc.; Wal-

---

[1]   Exhibit B, Doc. 1-3 at 2. Confusingly, the 34-paragraph complaint itself never explains how
Lezlee Stranger was injured, referring only to the "incident" and the "aforementioned
incident" without first mentioning an incident. This Court's understanding of the underlying
incident as a slip-and-fall, premises liability, negligence suit is taken from the civil cover
sheet and the parties' representations to the Court in their briefing.

[2]   *Id.*

Mart Stores East, LP; Wal-Mart Supercenter; Wal-Mart TRS, LLC; and "ABC Companies" ("Defendants").[3]

The complaint alleges that as a result of Stranger's slip-and-fall accident, she sustained "severe" injuries to her "left side, legs, wrists, hips, shoulders, neck, back, feet, and surrounding areas and other injuries both known and unknown," resulting in "great pain and suffering and agony and a deprivation of her normal mode of living and a loss of earnings and/or earning power."[4] "[T]he injuries sustained may be of a permanent nature and character."[5] The complaint also details "embarrassment and humiliation and severe emotional distress," "loss of life's pleasures, the full extent of which has yet to be determined,"[6] Stranger's inability "to attend to her usual duties and activities and life's pleasure,"[7] and the costs, present and future, of "money for medical services and treatment of the injuries."[8] The complaint itself requests no specific quantity of damages. But in the "Amount in Controversy" portion of the Court of Common Pleas of Philadelphia County's Civil Cover Sheet, parties must check either "$50,000.00 or less" or "More than $50,000.00."[9] Stranger checked off "More than $50,000.00" on her cover sheet.[10]

---

[3]   *Id.* at 3.
[4]   *Id.* ¶30.
[5]   *Id.* ¶31.
[6]   *Id.* ¶32.
[7]   *Id.* ¶33.
[8]   *Id.* ¶34.
[9]   *Id.* at 2.
[10]  *Id.*

On May 30, 2024, Stranger's complaint was served on Wal-Mart's representative.[11] Defendants then filed a Notice of Removal on July 1, 2024, claiming that removal was proper because this Court has diversity jurisdiction over the dispute.[12] After being removed to the United States District Court for the Eastern District of Pennsylvania, the case was transferred to this Court.[13] Stranger then filed the pending motion to remand the case to state court in July 2024.[14] That motion is now ripe for disposition. For the reasons stated below, it is denied.

## II.   DISCUSSION

By challenging this Court's jurisdiction over the action, Stranger's motion in effect asks for dismissal for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[15] The first step in evaluating a 12(b)(1) motion is to address whether it presents a "facial" or "factual" attack on the plaintiff's claims.[16] The "distinction is significant because, among other things, it determines whether we accept as true the non-moving party's facts as alleged in its pleadings."[17]

A facial challenge contests the court's subject-matter jurisdiction "without disputing the facts alleged in the complaint, and it requires the court to 'consider

---

[11]   Exhibit "C," Doc. 1-4 at 2.
[12]   Notice of Removal, Doc. 1 ¶¶6-27.
[13]   Jul. 1, 2024 Doc. Entry, Doc. 1.
[14]   Motion to Remand to State Court, Doc. 8.
[15]   *Houle v. Walmart*, 447 F.Supp. 3d 261, 272 (M.D. Pa. Mar. 30, 2020).
[16]   *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (citation omitted).
[17]   *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 625, 632 (3d Cir. 2017).

the allegations of the complaint as true."[18] A factual challenge, by contrast, asserts that the underlying facts of the case do not support jurisdiction.[19] When considering a factual challenge, a court may consider evidence outside the pleadings.[20] Further, the plaintiff bears the burden of contesting a factual challenge and proving that jurisdiction exists.[21]

A notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . or within 30 days after the service of summons . . . whichever period is shorter."[22] "For a federal court to exercise diversity jurisdiction over an action, the parties must be citizens of different states and the amount in controversy must exceed $75,000."[23] Stranger's motion to remand contests each of these points: she argues that Defendants' notice of removal was not filed by the deadline; that the parties are not completely diverse; and that the amount in controversy does not exceed $75,000. None of these arguments is meritorious.

## A.    Removal Deadline

Stranger first argues that, as Defendants were served with her complaint on May 30, 2024, and Defendants filed their notice of removal on July 1, 2024, the

---

[18] *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

[19] *Aichele*, 757 F.3d at 358.

[20] *Id.*

[21] *Davis*, 824 F.3d at 346.

[22] 28 U.S.C. § 1446(b)(1).

[23] *Brett v. Brett*, 503 F.App'x 130, 132 (3d Cir. 2012) (citing 28 U.S.C. § 1332(a)(1)).

notice of removal was filed 31 days after service of the complaint and therefore outside of 28 U.S.C. § 1446(b)(1)'s 30-day window for filing a notice of removal.[24] This is wrong. According to Federal Rule of Civil Procedure 6:

> [I]n computing any time period . . . in any statute that does not specify a method of computing time [such as 28 U.S.C. § 1446] . . . (A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Beginning from the first day of May 31,[25] the thirtieth day was Saturday, June 29.[26] In accordance with Rule 6(a)(1)(C), because the last day was a Saturday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."[27] That day was Monday, July 1—the day on which Defendants filed their notice of removal.[28] So Defendants' notice of removal was timely.

---

[24] Brief in Support, Doc. 9.

[25] Defendants state that the time period may not have been triggered for some parties, who may never have been served. Brief in Opposition, Doc. 11 at 12-13. But 28 U.S.C. § 1446's 30-day window is triggered upon a defendant's "receipt, through service or otherwise," of the initial pleading. 28 U.S.C. § 1446(b)(1). If the Defendants who did not receive service nevertheless received the complaint—a likely possibility given that all of the Defendants are Wal-Mart corporate entities—then the removal deadline would begin for those Defendants as well on May 30.

[26] Absent Rule 6(a)(1)(C), July 1 would have been 32 days after May 30, not 31 days.

[27] Fed. R. Civ. P. 6(a)(1)(C).

[28] Notice of Removal, Doc. 1.

**B.** **Diversity of Citizenship**

"The principal federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, gives federal district courts original jurisdiction of all civil actions 'between . . . citizens of different States' where the amount in controversy exceeds $75,000."[29] The statute requires "complete diversity between all plaintiffs and all defendants,"[30] meaning that "no plaintiff [may] be a citizen of the same state as any defendant."[31] "A corporation is a citizen both of the state where it is incorporated and of the state where it has its principal place of business."[32]

Stranger's only factual attack is that "complete diversity does not exist because Defendant, Wal-Mart Supercenter is located in Pennsylvania, specifically, 702 SW 8th Street, Bentonville, PA 72716."[33] She attaches as an exhibit a copy of her Pennsylvania Corporation Bureau Business Search stating that Walmart Supercenter's "Principal Address" is listed as "Bentonville, PA 72716."[34] Defendants respond that as there is no Bentonville, Pennsylvania—and the zip code 72716 corresponds to Walmart's principal place of business in Bentonville, *Arkansas*—"the Bureau of Corporations 'record' is clearly an error."[35]

---

[29]  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332).
[30]  *Id.*
[31]  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010); 28 U.S.C. § 1332(c)(1).
[32]  *Id.*
[33]  Brief in Support, Doc. 9.
[34]  Exhibit C, Doc. 8-5.
[35]  Brief in Opposition, Doc. 11 at 7.

Ordinarily, "[i]f there is a dispute of a material fact, the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."[36] When a party "challenge[s] the factual existence of [diversity] jurisdiction" under such circumstances, the party asserting jurisdiction is "required to prove by a preponderance of the evidence, after discovery," that there is complete diversity.[37] But there is no genuine dispute here because the facts resolving the parties' "dispute" are judicially noticeable.

"District courts have broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction that raises factual issues."[38] The Court exercises that discretion to take judicial notice of adjudicative facts which are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[39] "[T]he Third Circuit has followed the prevailing wisdom that documents available on government websites are public records."[40]

---

[36] *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006); *Richardson v. Donovan*, 673 F.App'x 246, 249 (3d Cir. 2016) (remanding case because of district court's failure to hold an evidentiary hearing on the dispositive fact of the location of an accident to determine whether it had subject matter jurisdiction).

[37] *Id.*

[38] 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (2023).

[39] Fed. R. Evid. 201(b).

[40] *Morgan v. Pennsylvania*, No. 4:23-CV-00872, 2023 U.S. Dist. LEXIS 177374, at *5-6 (M.D. Pa. Oct. 2, 2023); *see also In re Google, Inc.*, 806 F.3d 125, 133 n.12 (3d Cir. 2015); *Vanderklok v. United States*, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

According to the Pennsylvania Department of Community and Economic Development's website, no municipality named "Bentonville" exists in Pennsylvania.[41] Meanwhile, the United States Postal Service's website and the Arkansas Municipal League's website both associate the zip code referred to in Stranger's exhibit and on the Pennsylvania Corporation Bureau Business Search results, 72716, with "Bentonville, Arkansas."[42] Even the same Pennsylvania Corporation Bureau Business Search page referenced by Stranger lists "Bentonville, AR 72716" as the address for three Walmart entities, while listing "Bentonville, PA 72716" as the address for two.[43]

Despite Stranger technically attempting to make a factual attack upon the basis for diversity jurisdiction, this Court does not interpret Third Circuit precedent to require an evidentiary hearing whenever the parties merely claim that any material dispute exists. Judicially noticeable facts not subject to reasonable dispute conclusively establish that Walmart Supercenter's principal place of business is not in Bentonville, PA, because that city does not exist. An evidentiary hearing is not

---

[41]  *See* Pennsylvania Department of Community & Economic Development, PA Municipalities List, https://dced.pa.gov/local-government/municipal-statistics/municipalities/.

[42]  United States Postal Service, *Cities by ZIP Code*, https://tools.usps.com/zip-code-lookup.htm?citybyzipcode (Search Term "72716" returning result of "Bentonville, AR"); Arkansas Municipal League, *Local Government Portal: Search by Zip Code*, https://local.arkansas.gov/index.php (Search Term "72716" returning "Bentonville, AR"). Likewise, many judicial decisions have referenced that Walmart is headquartered in Arkansas. *See, e.g.*, *Pusateri v. Wal-Mart Stores East, L.P.*, 646 F.Supp. 3d 650, 651-52 (W.D. Pa. 2022); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 881 (5th Cir. 2000).

[43]  Pennsylvania Department of State, *Business Search*, https://file.dos.pa.gov/search/business (returning 47 entities for a business search of "Walmart," three of which are listed at a Bentonville, AR address and two of which are listed at a Bentonville, PA address).

warranted and would be a waste of judicial resources because there is no *genuine* dispute of fact on this matter.

Even if the Court were to conclude that Stranger's exhibit creates an issue of fact, no evidentiary hearing or factual discovery is required because it is not a material fact. Defendants highlight that Wal-Mart Supercenter is a "fictitious name, not an actual corporate entity," and Stranger's evidence—her search from the Pennsylvania Corporation Bureau Business Search webpage—describes Wal-Mart Supercenter's "Filing Type" as "Fictitious Name."[44] Pennsylvania law describes a "fictitious name" as "[a]ny assumed or fictitious name, style or designation other than the proper name of the entity using such name."[45] "The use of a fictitious name does not create a separate legal entity, but is merely descriptive of a person or corporation who does business under another name."[46] So as Defendants asserted in the Notice of Removal from the very beginning, "Walmart Supercenter" is improperly named as a Defendant.[47] As a fictitious name lacking distinct legal personhood, "Walmart Supercenter" has no citizenship, and so the address of any place of business associated with it irrelevant for purposes of diversity jurisdiction.

---

[44]   Brief in Opposition, Doc. 11 at 7; Exhibit C, Doc. 8-5 at 2.
[45]   54 Pa.C.S. § 302.
[46]   *Parks v. Woodbridge Golf Club*, Civil Action No. 11-0562, 2016 U.S. Dist. LEXIS 96420, at *19 (E.D. Pa. Jul. 22, 2016) (quoting *Burlington Coat Factory of Pa., LLC v. Grace Const. Mgmt. Co. LLC*, 126 A.3d 1010, 1024 (Pa. Super. Ct. 2015)).
[47]   Notice of Removal, Doc. 1 ¶6.

### C.  Amount in Controversy

Stranger's motion argues that Defendants' notice of removal does not proffer evidence to support the amount in controversy claimed in their notice of removal.[48] But she applies the wrong burden of proof, stating that Defendants must prove the amount in controversy requirement "by a legal certainty."[49] Stranger relies on the Third Circuit's decision in *Frederico v. Home Depot*,[50] but as the Supreme Court of the United States explained in *Dart Cherokee Basin Operating Co., LLC v. Owens*,[51] this approach was abrogated by the Jurisdiction and Venue Clarification Act of 2011.[52] Instead, a defendant removing a case to federal court has a simple burden. His "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."[53]

The Jurisdiction and Venue Clarification Act of 2011 sets out a procedure to follow where the amount in controversy is contested.[54] The sum demanded in good faith in the initial pleading is generally deemed to be the amount in controversy.[55]

---

[48]  Brief in Support, Doc. 9 at 9-11.
[49]  *Id.* at 10.
[50]  507 F.3d 188, 193 (3d Cir. 2007).
[51]  574 U.S. 81 (2014).
[52]  *Id.* at 88-89.
[53]  *Owens*, 574 U.S. at 89; *Bolger v. Utermohlen*, 485 F.Supp. 3d 588, 592 (E.D. Pa. 2020); 28 U.S.C. § 1446(a).
[54]  28 U.S.C. § 1446.
[55]  28 U.S.C. § 1446(c)(2); *Nimley v. James*, Civil Action No. 22-CV-4145, 2023 U.S. Dist. LEXIS 45033, at *5 (E.D. Pa. Mar. 17, 2023) (quoting *Dardovitch v. Haltzman*, 190 F.3d 125, 135 (3d Cir. 1999)) ("The sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."); *Chinchilla v. Geo Dis Am., Inc.*, Civil Action No. 23-1995(MAS)(TJB), 2024 U.S. Dist. LEXIS 38658, at *12 (D.N.J. Mar. 5,

"When a complaint is silent on the specific amount of damages sought, the court may also consider the notice of removal and the parties' submissions related to the motion to remand."[56] Likewise, where state law does not permit a plaintiff to request a specific amount of damages in the complaint, the notice of removal may assert the amount in controversy.[57] There, too, the amount in controversy claimed "should be accepted when not contested by the plaintiff or questioned by the court."[58] Only where a party's assertion of the amount in controversy is challenged must "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."[59]

Based on how Stranger has approached her motion to remand, it appears at first glance that this case should proceed along this last basis. After all, Stranger challenges Defendants' assertion of the amount in controversy in the notice of removal. But appearances can be deceiving. The motion is resolved by a reasonable reading of Stranger's complaint itself. As Defendants are the ones who removed the case, and Stranger cannot challenge the allegations in her own complaint, it cannot be said that *Stranger's* assertion of the amount in controversy has been challenged. And though Stranger's allegations are open-ended, the Court

---

2024) ("When a plaintiff has challenged the removal of his complaint based on the amount in controversy requirement, a federal court determines the amount in controversy by starting with the complaint itself.").

[56]  *Chilchilla*, 2024 U.S. Dist. LEXIS 38658, at *13.

[57]  28 U.S.C. § 1446(c)(2)(A)(ii).

[58]  *Owens*, 574 U.S. at 87.

[59]  *Id.* at 88.

need not look beyond them to resolve this motion. The complaint whispers but is not silent. It speaks loudly enough to unambiguously request more than $75,000. There is therefore no need to examine Defendants' notice of removal or hold an evidentiary hearing.

We measure the amount in controversy for a claim requesting unspecified damages "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."[60] As noted, Stranger's complaint ticks the applicable box for "Amount in Controversy: More than $50,000," and the open-ended complaint seeks damages for "severe" injuries, embarrassment, humiliation, severe emotional distress, pain and suffering, medical services and treatment of these injuries, deprivation of her normal mode of living, inability to attend to her usual duties and activities and life's pleasure, and a loss of earnings or earning power.[61]

Damages this far-reaching, and injuries of such alleged gravity, could undoubtedly be valued well upwards of $75,000 in damages. Based on a "reasonable reading" of Stranger's complaint, it is not plausible that the rights being litigated are both above $50,000 in value, and yet are clearly—"to a legal certainty"—worth less than $75,000.

---

[60]   *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002) (quoting *Angus v. Shiley, Inc.*,989 F.2d 142, 146 (3d Cir. 1993)), *overruled on other grounds by Earl v. NVR Inc.*, 990 F.3d 310, 314 (3d Cir. 2021).
[61]   Exhibit B, Complaint, Doc. 1-3 ¶¶30-34.

Stranger attempts to pare down the damages requested in her complaint. She states in her brief that although she requested damages for lost earnings or earning capacity in the original complaint, "there were no lost wages sustained by the Plaintiff."[62] But "[t]he amount in controversy is determined based on the plaintiff's complaint at the time the removal notice is filed."[63] "A plaintiff's post-removal stipulation or amendment reducing the amount in controversy or limiting the types of relief sought has no bearing on the amount in controversy for diversity purposes."[64]

When the plaintiffs in *Werwinski v. Ford Motor Co.* stated in their motion to remand, for example, that their complaint only sought repair costs to their automobiles, the Third Circuit rejected this argument because a "reasonable reading' of the complaint" did not so indicate.[65] Accordingly, the plaintiff's allegations in her briefing of the motion to remand were "of 'no legal significance' to the court's determination."[66]

---

[62]  Brief in Support, Doc. 9 at 10.

[63]  16 MOORE'S FEDERAL PRACTICE – CIVIL § 107.56

[64]  *Id.*; *Werwinski*, 286 F.3d at 666-68 (3d Cir. 2002); *Angus*, 989 F.2d at 145; *Lang v. Adecco USA, Inc.*, No. 20-44, 2020 U.S. Dist. LEXIS 131998, at *6 (M.D. Pa. Jul. 24, 2020) (quoting *Albright v. R.J. Reynolds Tobacco Co.*, 531 F.3d 132, 135 (3d Cir. 1976)) (explaining that this analysis "may not consider 'events occurring subsequent to removal which reduce the amount recoverable.'").

[65]  *Werwinski*, 286 F.3d at 666-67.

[66]  *Id.* at 667 (quoting *Angus*, 989 F.2d at 145).

True, there are some situations where a plaintiff may amend or clarify her complaint for purposes of assessing jurisdiction after removal.[67] Such amendments may even be made with later-filed affidavits.[68] But the statute in which this right is grounded provides that "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."[69] The purpose of this provision is to "permit amendment broadly to avoid the dismissal of suits on technical grounds"[70]—not to facilitate the dismissal of suits on technical grounds. Even if Stranger had properly amended or clarified this allegation in her complaint, Section 1653 would be inapplicable here. And were Stranger's lost earnings claims stricken from her complaint, her complaint would remain open-ended, and she could still pursue a large recovery for her injuries.

The Court therefore disregards this part of Stranger's briefings, and resolves the motion based on the state of Stranger's allegations in the initial complaint. This includes the complaint's request for damages for potential lost wages or earning capacity. As a reasonable valuation of the rights being litigated in the complaint is well beyond $75,000 in damages, the amount in controversy requirement is satisfied.

---

[67] *See, e.g.*, *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 204-205 (3d Cir. 2003).

[68] *Id.*

[69] 28 U.S.C. § 1653.

[70] *Moore v. Coats Co.*, 270 F.2d 410, 412 (3d Cir. 1959). *See also Local No. 1 (ACA) Broadcast Emps. Of Int'l Brotherhood of Teamsters, etc. v. Int'l Brotherhood of Teamsters, etc.*, 614 F.2d 846, 853 (3d Cir. 1980) (Grant of Section 1653 motion to amend pleadings is discretionary, and should be liberally permitted in interest of justice to avoid dismissal of suit on purely technical grounds").

## III.    CONCLUSION

Stranger's arguments concerning the removal deadlines are premised on a miscalculation of the time elapsed after her filing of the complaint. Her factual attacks concerning diversity of citizenship are misplaced, both because judicially noticeable facts show that no Defendant is a citizen of Pennsylvania and because it is premised upon the purported citizenship of fictitious names—which have no citizenship and are not corporate entities at all. And, Stranger's amount-in-controversy objections are belied by her own complaint's request for damages, which cannot be pared back through unsubstantiated allegations in post-removal briefing. Accordingly, Stranger's objections to diversity jurisdiction are meritless. Her motion for remand will therefore be denied.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge